## CLARK & SMITH v. SMITH and others.

W. H., by consent of the mortgagees, and while a bill for foreclosure and sale of the premises was depending, took possession of a cotton mill and premises, (supposed to be worth not more than the amount of the complainant's mortgage,) in expectation of becoming the purchaser, and before a decree for sale of the premises was obtained. Considering it necessary to enable him to use the property to advantage, to make improvements and repairs, and in order to protect himself in so doing, he obtained from J. T. a defendant in the suit and holder of a subsequent mortgage, an instrument of writing, in which after reciting that J. T. held a mortgage on the premises in question for about one thousand five hundred and sixty-one dollars ; that there were prior incumbrances on the property ; and as the premises

were not considered worth more than the prior incumbrances, and there-fore furnished no security for the amount due to J. T. ; and as the said W. H. wished to take possession of, to improve, and extinguish all incumbran-ces on, the property ; therefore, to enable him to extinguish the outstand-ing incumbrances, he, J. T. for the consideration of one hundred dollars, "released to the said W. H. all the right, title, and interest, which he, the said J. T. had, in and to the said cotton mills, machinery, and pre-mises, by virtue of said mortgage." By this instrument the mortgage, which was the security, was separated from the debt, which was the principal. The only operation of the instrument was, to release or give up the mort-gage, and exonerate the property from its lien : it did not extinguish or transfer the debt, or impair the claim of J. T. for the same, against the other property or person of the mortgagor.

W. H. also obtained from subsequent judgment creditors, an instrument, where-in, after reciting that as the prior incumbrances exceeded in amount the va-lue of the property, which formed therefore no security for the judgment, they, the plaintiffs, for the sum of thirty-three dollars seventy-five cents, and for the purpose of enabling W. H. to extinguish the outstanding incum-brances, "released to the said W. H. all the right, title, and interest, which they had in said cotton mills, machinery, and premises, by virtue of said judgment." Notwithstanding this, the judgment remains, and remains the property of the plaintiffs ; but this estate is to be no longer subject to its lien.

The premises in question having been thus exonerated from the operation of these liens, and having afterwards been sold by the sheriff for an amount exceeding the demands of the complainants ; W. H., by virtue of these in-struments, is not entitled to the surplus money, but it must go to the as-signee of the mortgagor, (he having been discharged under the insolvent act,) for the benefit of his creditors.

Where one comes into possession under mortgage creditors, he may be con-sidered as a mortgagee in possession ; yet when he comes in purely as a volunteer, whether he ought to be placed in a situation quite so favor-able, Quere.

Where a mortgagee in possession, is necessarily put to expenses, in defending or securing the title, he is entitled to an allowance for the expenditure : as where he has been put to expense in foreclosing his mortgage, or has advanced money for fines on the renewal of leases under which the pre-mises were held, or has expended money in defending the title of the mort-gagor to the estate, when his title has been impeached, it may be added to the debt of the mortgagee ; and taxes, if paid by the mortgagee, are a pro-per charge against the estate.

But a mortgagee cannot charge for trouble and expense in receiving the rents and profits, although there may be a private agreement for such allowance between him and the mortgagor, nor for the expense of insurance, which is considered as the act of the mortgagee, for his own benefit.

So, where a mortgagee in possession, undertakes, without the consent and approbation of the mortgagor, to make improvements on the property, though they may be of a beneficial and permanent character, he does it at his po-

ril, and has no right to look for an allowance at the hands of the mort-gagor. If the mortgagor does not choose to have the improvements, the mortgagee has no right to impose them upon him, and thereby, perhaps, deprive him of the power of redeeming.

The ordinary rule is, that money laid out in improvements, does not create a lien : there is no hardship in the rule. A mortgagee is no more bound to im-prove the estate, than the mortgagor. If the mortgagor, after giving the mortgage, makes improvements on the premises, the whole of them shall go, if it be necessary, to satisfy the mortgage ; and so, if improvements are made by the mortgagee, they are voluntarily made, and he cannot afterwards turn round and claim allowance for them. They will enure for the benefit of the estate, and if he should suffer a loss, the maxim will well apply ; *volenti non fit injuria.*

It is well settled, that a mortgagee in possession is not bound to expend mo-ney on the mortgaged premises, further than to keep them in " necessary repair :" this language has been construed strictly, and such allowance put on the ground of " absolute necessity for the protection of the estate ;" for such expenditure, when incurred, he will receive allowance.

If in this case the mill could have been used with the machinery as it was when W. H. voluntarily took possession of it ; if the repairs made were for the purpose of increasing its speed, or enabling it to do a greater amount of work than it had formerly done, when its machinery was in order, so as to en-hance the benefit of the possession ; then no allowance is to be made for the repairs. If they were really indispensable to keep the mill in opera-tion, then they ought to be allowed.

There is a distinction between necessary repairs and highly beneficial improve-ments : in this case it was referred to a master to take an account of such repairs, if any, and of the proper allowance to be made therefor.

A BILL was filed by the complainants for a foreclosure and sale of certain mortgaged premises in Paterson, in the county of Essex, consisting of a cotton mill and machinery, then in the occupation of Nicholas Smith. There were a number of incum-brances on the property, and all persons interested were made parties to the bill. In 1826, an execution issued for the sale of the premises, to raise the sum of eight thousand nine hun-dred and nineteen dollars and ten cents ; being the amount de-creed to be due to the complainants, to Samuel Downer and John Crumby, and to the Paterson bank ; being all the claims which had been presented to the master who took the account. Besides these claims, there was a judgment due the Paterson bank of about                                  dollars, which by accident was not included in the master's report ; and there was also a judgment in favor of Benjamin Deforest and Al-

fred Deforest, for about four hundred dollars, and a mortgage to Jonah Tilley of about one thousand six hundred dollars. The property brought at the sheriff's sale the sum of eleven thousand seven hundred and forty dollars ; which, after satisfying the demands of the execution, left a balance in the hands of the sheriff of two thousand seven hundred and eleven dollars and seventy-one cents, subject to the order of the court.

In 1827, Warren Haight filed his petition in this court, praying that this surplus money might be paid over to him. He stated in his petition, that pending the above mentioned suit, he entered and took possession of the mill and premises, with the consent of the persons entitled to the equity of redemption, or some of them, and under an expectation of becoming the purchaser ; that the premises were at that time in a very dilapidated state, and not considered to be worth the amount of incumbrances ; that finding extensive improvements necessary to enable him to use the property to advantage, he did, in order to protect himself as far as possible, obtain from Jonah Tilley, one of the defendants in the suit, an assignment of his mortgage on the premises, and from Benjamin and Alfred Deforest, two of the defendants, an assignment of their judgment against Nicholas Smith ; that having procured an assignment of said incumbrances, he proceeded to make repairs and improvements on the said mortgaged premises, to the amount of three thousand two hundred and seventy-seven dollars, and also put new machinery in the mill to the value of two thousand six hundred and eighty-seven dollars ; that at the sheriff's sale he became the purchaser of the property for eleven thousand seven hundred and forty dollars, which has been satisfied to the sheriff, and he has received a deed for the property. He further sets forth, that he has obtained an assignment of the judgment of the Paterson bank above specified, and that there is due on the same the sum of seven hundred and forty-nine dollars, or thereabouts ; that there is due on the mortgage assigned to him by Tilley, one thousand six hundred and fifty-two dollars, and on the judgments assigned to him by the Deforests, four hundred and twenty-three dollars or thereabouts, making altogether an amount exceeding the surplus money raised on the execution ; that he is the bona fide owner of the property, and that the property would not have

brought enough at the sheriff's sale to satisfy the execution, but for the extensive and valuable improvements and repairs made on it by the petitioner. He prays therefore, that an account may be taken of the amount of said incumbrances, and that the surplus money, or so much as may be necessary, be directed to be paid him in satisfaction of the same.

The petition was referred to a master, who proceeded to take evidence and examine the facts charged in it. After investigation, the master reported that the petitioner had no claim to any part of said surplus, by reason of the alleged assignment of the Tilley mortgage ; that the assignment or release from Tilley to Haight, did not operate to pass over the debt to Haight, but only to extinguish the mortgage lien on the premises ; and so, in like manner, that the assignment or release from the Deforests to Haight, did not pass to him their interest in the judgment, but was intended to extinguish the judgment lien on the property about to be purchased by Haight ; and in regard to the claim of the petitioner under the judgment in favor of the Paterson bank, the master reported that it did not appear that the judgment was ever assigned to Warren Haight, but that the amount due on it was rightfully owing to the said Paterson bank, which was entitled to receive it out of the surplus ; and that the balance of the said surplus should be paid to Uriah Garrabrants, the assignee of Smith the mortgagor, (who had become insolvent and taken the benefit of the insolvent laws,) to be by him appropriated for the benefit of Smith's creditors. Exceptions were taken to the report of the master generally, and the whole matter was brought before the court for revision.

*P. Dickerson*, for the petitioner.

The bill was filed in October, 1824. N. Smith, the mortgagor, was discharged under the insolvent act, in February, 1825. After that, no person took charge of the property. Dickey, the tenant, gave up possession of the mill ; Garrabrants, Smith's assignee, delivered over the keys to the agent of the Paterson bank. In June, 1825, they rented to Ruton & Benson, who soon after gave up the possession. The bank, holding the first mortgage and a subsequent judgment, were willing to make a sacrifice. They

offered to sell the property, but could not. It was then thought not worth nine thousand dollars. Afterwards, Haight came forward, and on the 4th March, 1826, contracted with the bank for their claims on the property. It was then in such a state that he could not use it to advantage without improvements and repairs. To secure himself in making the improvements and repairs that were necessary, on the 6th March, 1826, he entered into these contracts with Tilley and the Deforests. Tilley, for one hundred dollars, agreed that Haight might have the control of his mortgage, and extinguish it when he thought proper. (He consented also that the bond might be used for the purpose of obtaining a decree. We had it in our hands, but it got back into the hands of Tilley, and therefore the master would make no report on this mortgage.) The Deforests, for thirty-three dollars and seventy-five cents, made a similar agreement as to their judgment. These transactions were perfectly fair, and the considerations sufficient, as the claims were given up as lost. Haight sought to obtain the control of these incumbrances, that he might thereby protect himself in making the necessary repairs and improvements ; and not for the purpose of extinguishing them for the benefit of other persons. He took possession on the 26th March, 1826 ; put in new machinery to the amount of one thousand nine hundred and eighty-one dollars ; expended one thousand four hundred dollars in repairs and improvements on the property, and carried on the mill until the sale. In July, 1826, there was a decretal order made in the cause, referring it to a master to take an account as to mortgages : judgments by accident were omitted in the order, and therefore not noticed in the report. This was considered unimportant at the time, as it was not supposed that the amount of the sale would reach them. A final decree was obtained in October, 1826, and an execution issued, upon which there was due on the 6th March, 1827, nine thousand and twenty-eight dollars and twenty-nine cents. The property was then sold by the sheriff to Haight, for eleven thousand seven hundred and forty dollars. From the evidence taken under the petition, it is manifest, that without the improvements and repairs made by Haight, the property would not have sold for more than sufficient to satisfy the decree. As it is, it has produced a surplus of two thousand seven hundred and eleven

dollars and seventy-one cents, which is claimed by the petition-
er. But the master's report gives it to Garrabrants, the assignee
of Smith, for the benefit of his creditors. The master, we ap-
prehend, has mistaken the nature of these contracts between
Haight and Tilley, and the Deforests. He supposes them to be
releases, and that they operated to extinguish the claims. This
is not the effect of a release to a purchaser : it passses an in-
terest when it is necessary to effectuate the intent. 2 *Mason
R.* 531. These contracts were not intended to extinguish the
liens, but to give Haight the control of them for his benefit, and
enable him to extinguish them when he thought proper. Equi-
ty will regard the intent of a contract and carry it into effect.
The intent in this instance cannot be mistaken, and to car-
ry it into effect, an interest in these liens must necessarily pass
to Haight. He claims the surplus money on two grounds. 1.
Having come into possession under the mortgagees, and made im-
provements and repairs to a large amount, he claims it as mort-
gagee, on the ground that a mortgagee in possession, is enti-
tled to an allowance for all permanent and necessary improve-
ments and repairs. 1 *Vern. R.* 316 ; 3 *Atk. R.* 518 ; *Pow. on
M.* 88–9 ; *Finch R.* 38 ; 4 *Ves. jr.* 266 ; 3 *Pow. M.* 956 *n.*
(*q.*) 957. 2. He claims it as having the equitable right to the
incumbrances of Tilley and the Deforests. These are next in
order to the Paterson bank judgment ; they are outstanding in-
cumbrances, and Haight is entitled to all the benefit to be deri-
ved from them. Tilley and the Deforests, after having agreed to
give the whole benefit of these liens to Haight, cannot now turn
round and claim the money under them ; and it would be still
more inequitable and unjust, that they should be considered as
extinguished, and the extinguishment should enure for the bene-
fit of Smith and his creditors, and be of no service to Haight. It
would defeat the obvious intent of the parties, and instead of pro-
tecting Haight, would expose him to the very difficulty he sought
by these contracts to avoid.

*W. Pennington,* contra.

Haight claims on two grounds : under the agreement with Til-
ley and the Deforests, and for improvements.

1. As to the agreements. The contract with Tilley cannot operate as an assignment of the mortgage ; the debt is the principal, the mortgage is an incident. Tilley had a right to destroy the incident and extinguish the mortgage if he chose. 4 *Kent. C.* 186 ; 11 *John. R.* 584. But he could not, by way of assignment, separate the mortgage from the debt ; the debt cannot be in one person, and the interest in the mortgage in another. 4 *John. R.* 41 ; 5 *John. C. R.* 570. From these cases, the fair conclusion is, that mortgages are mere securities for the debt ; they only pass an interest in the land as ancillary to the debt. Unless therefore the debt, or the interest in it, was assigned to Haight, the assignment of the mortgage was void. The proper construction to be given to the agreement with Tilley is, that it is an extinguishment of the mortgage lien on the premises. 19 *John. R.* 326. This is in accordance with what we consider the spirit of the contract. The agreement recites a wish to extinguish the incumbrances. On the other side, it is said, that it was not intended to extinguish the mortgage, but to enable Haight to do it when he thought proper ; but if so, that does not authorise him to take the debt and consider it as his own ; the agreement does not transfer the mortgage, but releases all right under it. It can amount to nothing more or less than an extinguishment. The agreement with the Deforests is of the same import, made on the same day, and with the same view. It releases to Haight all right and title to the mill, under the judgment. It does not release the debt, but only the lien under the judgment. Tilley on his bond, and the Deforests under their judgment, yet have subsisting demands against Smith, which he may at any time be called on to pay.

2. As to the claim for improvements. At first view, there would appear to be some equity in this, as the improvements were put on the property by Haight : but such a doctrine is inadmissible. According to this a mortgagee might make great improvements, then at the sale give notice that he claims for improvements, embarrass the sale, and when the property was sold for a depressed price, come in and claim the surplus. This is a dangerous doctrine for mortgages ; the cases are the other way. 1 *John. C. R.* 385. The most favoured situation in which

Haight can be placed, is that of a mortgagee. Standing in that character, (for the sake of argument,) he is not entitled to the surplus money. I do not deny that a mortgagee in possession may repair a roof for upholding the premises, and be allowed for it; it may be necessary to prevent the destruction of the property; but the court have been careful to limit the principle to necessary repairs; else a mortgagee might raise the value of the premises, and the amount of his lien, so much, that the mortgagor could not redeem; and the greater the value, the greater the danger, as upon a sale there would be fewer bidders. But what was the situation of Haight, with respect to this property? Smith, the owner of the equity of redemption, was prostrate; the Paterson bank had a large amount of liens on the mill; a bill for foreclosure was filed in 1824; the suit was depending nearly two years, during which time Haight had nothing to do with it. After all this, he comes in, contracts with the incumbrancers, and takes possession of the property, in March, 1826. There was a decree for sale in October, 1826: if he had only waited a few months, there would have been a sale of course. He is, therefore, a mere volunteer, and does not stand in the light of a tenant by mortgage, who is driven to make repairs for the support of the property.

What were the repairs he put on the premises? He evidently intended to become the owner of the property, and he made improvements to suit his own views. To admit the principle, that for these improvements he is entitled to allowance in relation to these mill establishments, would be ruinous: in them many changes are made, not to support them, but to improve their operation, and render them more productive; and all these may, by some persons, be considered necessary, as they are by witnesses in this case. Another consideration is, the bank took possession of this property, rented it one year, and received the rent; Haight occupied it another year before the sale; yet we have no account of rents and profits. If these improvements are to be paid for, we say they ought to be paid for out of the rents. Haight also put in new machinery; notice was given at the sale that this did not go with the mill; the sale was embarrassed by it, or the property might have sold for more. Haight bought

17

it, and then comes in and asks for the surplus money.  We ap-
prehend he is not entitled to it.   We agree, that Tilley and De-
forests are not, by virtue of any liens they have on this property :
the money belongs to the assignee of Smith, for the benefit of
his creditors.

*T. Frelinghuysen*, on the same side.

After the bill was filed, and Smith was prostrate, the bank set
about to save themselves ; the suit was delayed, and they rented
the property.   After the tenants gave up, Haight came forward ;
it was a speculation between the bank and Haight.   Their object
was to secure their claims ; his to become the owner of the pro-
perty.   Smith, the owner of the property, had nothing to do with
it.   Haight agreed with the bank to remove the incumbrances,
and they agreed to sell their whole interest to him.   This gave him
the control, and prevented competition.   After making the ar-
rangements with Tilley and the Deforests, he took possession
of the property ; he treats the property as his own ; re-organi-
zes it, and introduces new machinery, to suit his own views.   At
length the property is sold, and, unexpectedly, it brings more than
the incumbrances included in the decree ! Haight then turns round
and claims the surplus, in the character of a mortgagee, because
he says he has made improvements.   He does not stand in the
light of a mortgagee ; he s a mere volunteer, and a volunteer
while a suit was depending, and after the court had taken cog-
nizance of the whole matter.   He claims the new machinery ;
that was not sold ; he gave notice that he claimed it, which em-
barrassed the sale of the property, and this must always be the
case, where such a course of proceeding is allowed.   Supposing
him a mortgagee, his claim for improvements is inadmissible.   The
allowance of such claims would lead to the ruin of mortgagors ;
it would enable a second mortgagee always to defeat the third,
by adding to the amount of his prior lien, a charge for improve-
ments voluntarily made.   Such a principle has never found foot-
ing in New-Jersey.   The authority from Powel, is the dictum
of a Mr. Coventry, of Lincoln's Inn ; it is not supported by the
cases.   The true doctrine in that book, and in the chancery of
New-York, is, that when the repairs are necessary for the pro-

tection of the estate, they may be allowed. The mortgagor, it seems, has his *veto.* In 1 *Ball & B.* 385, Lord Manners says, the mortgagor should at once be deprived of the necessity. Haight is not entitled to the money on this ground; nor do the agreements with Tilley and the Deforests avail him any thing; they are under seal; they speak for themselves, and clearly show the intent of the parties. The object was to extinguish the outstanding incumbrances; the parties only released to Haight such right to the mill, as they had under the mortgage and judgment, but did not transfer the debts. Haight acted on the belief that the property would not bring more than nine thousand dollars, and in that view he dealt with Tilley and Deforests. When the final arrangement was made with the bank, they stipulated to assign and transfer to Haight the bonds and mortgages they held against Smith. Haight's difficulty is, that he treated the property as his own, when he had no right to do so, and could have been under no mistake about it. If he has expended his own money in improving the property of another, without authority for so doing, and at a public sale has been compelled to pay for these improvements, and suffered by it, he has no reason to complain; but from the circumstances of this case, it does not follow that he has suffered any loss. He occupied the property a year before the sale, without accounting to any one, so far as appears, and the rents and profits ought to at least to be an equivalent for the improvements.

Oct. 1830.

Clark and Smith
v.
Smith et al.

*I. H. Williamson,* for the petitioner, in reply.

Any delay in the suit is not to be imputed to Haight; he was not a party. The property was abandoned by Smith and his assignee; his tenant also abandoned it, and the keys were delivered up to the agent of the bank. It was after this that Haight entered into the property, not for the purpose of speculation, or with any fraudulent intent, but with correct and proper views. The property was so circumstanced, that a sale was necessary, and he expected to become the purchaser; it was in a dilapidated state, unfit for use; he adopted the plan of taking up or extinguishing the liens; he agreed with the bank for the pay-

ment of their whole debt, including their judgment, and made arrangements for securing the control of Tilley's mortgage, and the judgment of Deforests. After this, he repaired and improved the property. In consequence of his taking possession, and making these improvements, the property has sold for a much greater sum than it otherwise would. He now claims for the amount of Tilley's mortgage, and Deforests' judgment, and for repairs.

1. Tilley's mortgage has not been paid; if not extinguished, it remains a lien on the property. A court of equity is never embarrassed by technical forms; it looks at the intention of the parties. Tilley has parted with his mortgage; if there was no intention to extinguish it for the benefit of Smith, it remains for the benfit of Haight. It is not merged in the legal estate; the law will not endure a legal and equitable estate in the same person; but equity will preserve these two interests distinct, to effectuate justice, and the intention of the parties. 18 *Ves. jr.* 69 ; 6 *John. C. R.* 417. What then was the intent of the contract between Tilley and Haight? From the agreement it appears, that Haight desired to secure himself; Tilley's object was the same. It could not have been the object of Haight to extinguish the mortgage for the benefit of Smith, or his general creditors. The instrument may be corrected so as to carry into effect the intention of both parties, and secure Haight. Tilley does not object to it; no one objects but Smith; the transaction was fair as it respected him; it did not injure him in any way; he is safe, on our doctrine. If Haight raises the money on the mortgage, a court of equity will protect Smith against the bond; if it is not paid on the mortgage, then he is liable on the bond; he has no right to complain. The master supposes that the agreement between Tilley and Haight, operated as an extinguishment of the mortgage; we think not. In equity, a release will have the operation intended by the parties. 2 *Mason R.* 531. The release should have been considered as continuing and preserving the mortgage, for the benefit of Haight. No actual transfer of a bond and mortgage is necessary in equity to vest the right. We admit that at this day, a mortgage cannot be assigned, without the debt, so as to authorize the assignee to bring ejectment; but does it operate as an extinguishment? We think not; to give it that effect, in this instance, would violate

the intention of both parties. The judgment of Deforests stands on the same footing.

2. As to the claim for repairs, the quantum is not now the subject of consideration; that is for the master. It is enough for us to show, that Haight made necessary repairs; it is not denied that he made improvements and repairs. The evidence proves, that he expended a large amount in repairs, much of it for the preservation of the property, by which its value was greatly enhanced. Without this, there would have been no surplus to contend about. Smith is not injured; he stood by, and made no objection to the improvements; to object to it now, is contrary to all equity and conscience. They refuse to pay even the ground rent. Ground rent and taxes, are always paid by the person in possession, and allowed. A mortgagee in possession, is always allowed for necessary repairs; the decision in *John. R.* is correct. There the claim was for clearing wild lands, and in that case the chancellor allowed for necessary reparation. They say Haight was a volunteer; if so, he did not injure Smith; he took possession when no one else would, and made it bring more than it otherwise would have done. We make no claim for the new machinery put in; notice was given at the sale that this would be taken out. This was not done to embarrass the sale, but to remove difficulty. Every one knew what he was going to buy. But it is said Smith has not had the benefit of the rents; and the repairs ought to be satisfied from them. This question cannot now arise. If the bank were in possession, the rents and profits should have been brought in before the master. Haight cannot be charged with rents, before he came into possession. We are entitled to an account, for necessary repairs, and think the surplus money cannot, on any principle, be awarded to Garrabrants; it belongs to Tilley, or Deforests, or to Haight.

THE CHANCELLOR. The first matter for inquiry is, whether the petitioner can make lawful claim to any part of this surplus money, by virtue of the releases, or assignments, (as they have been called,) from Tilley and the Deforests.

On this part of the case, I am perfectly satisfied with the master's report.

If Haight can claim under these assignments, it must be on

the ground, that they vested in him all the rights and interest of these judgment and mortgage creditors; that the debts themselves, or the right to receive them, were transferred to him. Is this so? Let us look at the instrument, which has been called the assignment of the Tilley mortgage. It states that Tilley had a mortgage on the mills and property in question, given by Smith, for about one thousand five hundred and sixty-one dollars; that there were prior incumbrances on the property, to the amount of about nine thousand one hundred and forty dollars, which had been purchased by Haight; that as the premises were not consx̆dered worth any more than those prior incumbrances, and therefore furnished no security to Tilley, for the amount so due to him as aforesaid; and as the said W. Haight wished to take possession of, and improve the said property, and to extinguish all incumbrances upon the same; therefore, to enable the said W. Haight to extinguish the outstanding incumbrances, he released, (for the sum of one hundred dollars,) " all the right, title and in-
" terest, which he, the said Jonah Tilley had, in and to the said
" cotton mill, machinery and premises, by virtue of said mortgage."

I see nothing in this instrument, that looks like a transfer of the debt to Haight. Tilley released his mortgage interest, and nothing more; it was to enable Haight to extinguish the incumbrance on the property he was about to own; it was considered that the property, with the load of incumbrances on it prior to the Tilley mortgage, furnished no kind of security to Tilley for his debt; and therefore, he gave it up for the sum of one hundred dollars, as mentioned in the instrument; the debt, then, which was the principal, remained in Tilley, and the mortgage, which was the security for the debt, was given up to Haight for his benefit.

What rights then, had Haight, under the mortgage thus released to him? Could he hold it on the property; and if the property brought at sheriff's sale more than enough to satisfy the prior incumbrances, could he take the surplus and appropriate it to the mortgage, and thereby extinguish so much of the debt itself in the hands of Tilley? Surely not. Tilley never parted with his debt; the giving up of the mortgage did not operate to extinguish the debt, or to impair the claim against the other property of Smith, or against his person; he had no other right, under the

assignment, as I conceive, than the right of exonerating the property from the operation of the mortgage ; the mortgage was separated from the debt, and vested no interest whatever in Haight. Chancellor Kent, in his commentaries, says, " The assignment of the interest of the mortgagee in the land, without the assignment of the debt, is considered to be without meaning or use. This is the language of the courts of law, as well as of the courts of equity, and the common sense of the parties. The spirit of the mortgage contract, and the reason and policy of the thing, are with the doctrine." 4 *Kent*, 186. Could Haight have maintained an action of ejectment, in a court of common law, on this mortgage, without the bond ? Could he, without it, have obtained a foreclosure and sale in this court ? Could he have transferred the mortgage, in any way, so as to create an interest in the purchaser ? If he could, he might, by some of these means, have satisfied the debt, and cut off the holder of the bond. This cannot be ; nor was such the intention of the parties. The object of both, as manifested by the instrument, was to exonerate the property from the lien of the mortgage ; and this was effectually done, or the power to do it was effectually given.

The claim under the judgment, in favor of the Deforests, stands upon the same footing. After reciting that the prior incumbrances on the property exceeded in amount the value of the property, and formed, therefore, no security for their judgment, they, for the sum of thirty-three dollars and seventy-five cents, and for the purpose of enabling Haight to extinguish the outstanding incumbrances, " release to the said Warren Haight, all the right, " title and interest, which they have in said cotton mills, ma- " chinery and premises, by virtue of said judgment." The judgment remains, and it remains the property of the Deforests : but this estate is to be no longer subject to its lien. The agreement was not that so much of the property bound by the judgment, should pass to Haight, and that the money raised by the sale, after satisfying prior incumbrances, should go to Haight, but that the property should no longer be subject to the lien of the judgment.

I am clearly of opinion, therefore, that the petitioner has no just or equitable claim to any part of this surplus money, either in virtue of the mortgage of Tilley, or the judgment of the Deforests.

It is asked, to whom is the surplus money to go? If not to Haight, then certainly not to Tilley, or the Deforests; their right under the mortgage and judgment are gone; they have given them up, and agreed to look elsewhere for their money. It follows, as a matter of course, that it must be paid to the assignee of Smith, the original debtor; no other person can claim it.

It is said, however, that these assignments were made for the benefit of Haight, and that by this construction, the express intention of the parties will be defeated. If this should be the case, will it result from the construction now given, or from the situation in which Mr. Haight stood at the time, and the course he pursued in that situation? He was a stranger to the original transactions; he was let in by persons claiming rights, but not by the real owner; he proceeded to buy up, and extinguish the incumbrances; treated the property in every respect as his own; repaired, altered and improved it; and all the while appeared to forget that the person holding the equity of redemption, stood behind him. Mr. Smith, and his rights, appear to have been lost sight of entirely; he had, at that time, taken the benefit of the insolvent laws; all his interest, of what kind soever, had been assigned over, and it is not to be wondered at that his right of redemption should have been considered of too little value to be attended to, when we look at the amount of incumbrances; and when we know, too, that in the state of New-Jersey, assignees of insolvent debtors too often pay little or no attention to the property assigned to them or the rights of those interested.

If these releases do not operate to the benefit of Mr. Haight, it cannot properly be imputed to the construction now put upon them; he ought to have secured the equity of redemption, and then he would have been perfectly safe.

I proceed, now, to consider the claim set up by the petitioner, to allowance for necessary repairs and improvements, after the property came into his possession. It appears by the evidence taken before the master, that Haight went to a considerable expense in improving and repairing the property, and that he put new machinery in the mill, to enable him to operate with greater benefit. The new machinery could not belong to Smith; it was expressly excepted at the sale, and cannot enter into this controversy. The single inquiry therefore, is, whether Haight can be allowed for

any repairs or improvements, made while he held the property, and before the sale.

He came into possession under the Paterson bank, and others, being mortgage creditors; he may be considered, therefore, as a mortgagee in possession; and yet, when it is seen that he came in purely as a volunteer, I am not sure that he ought to be placed in a situation quite so favorable. Whether a mortgagee in possession, shall be allowed, in accounting with the mortgagor, for repairs and permanent improvements, is a point which has frequently been discussed in courts of equity; as also, how far he shall be allowed for costs and expenses, and generally, for care and trouble in taking charge of the estate.

When a mortgagee in possession, is necessarily put to expense in defending or securing the title of the property, he is entitled to an allowance for the expenditure. In *Loman* v. *Hide*, 2 *Vern.* 185, the second mortgagee brought a bill to redeem the first mortgagee, who had been put to a great charge in foreclosing his mortgage; and it was decreed that these charges should be allowed him in the account. So in *Woolley* v. *Drag*, 2 *Anstru.* 551, the mortgagee being in possession, had advanced money for fines, on the renewal of leases, under which the premises were held, and they were allowed him. The only question made, was whether he should have full interest on them. And in *Godfrey* v. *Watson*, 3 *Atk.* 518, Lord Hardwicke said, if a mortgagee had expended money in supporting the title of the mortgagor to the estate, where his title had been impeached, it might be added to the debt of the mortgagee. On the same principle, taxes, if paid by the mortgagee, are held to be a proper charge against the estate: 1 *Hopk.* 283, *Faine* v. *Winans.* But a mortgagee cannot charge for trouble and expenses in receiving the rents and profits, although there may be a private agreement for such allowances between the mortgagee and mortgagor: *French* v. *Burr*, 2 *Atk.* 120; *Godfrey* v. *Watson*, 3 *Atk.* 518; *Bonithon* v. *Hockmore*, 1 *Vern.* 316. So the expense of insurance is one for which no allowance will be made, it being considered as the act of the mortgagee for his own benefit, and for which he has no right to look to the mortgagor for remuneration: 5 *Pick.*, *Saunders* v. *Frost;* 3 *Pow. on Mortg.* 957.

As it respects improvements, there appears to be some contrariety of decisions ; but I have no hesitation in saying, that when a mortgagee in possession, undertakes, without the consent and approbation of the mortgagor, to make improvements on the property, though they may be of a beneficial and permanent character, he does it at his peril, and has no right to look for an allowance at the hands of the mortgagor. This is the sound doctrine of this court, and it is founded on principles of equity and good conscience. It would be unjust that a mortgagee, or a voluntary purchaser under him, getting possession of the mortgaged premises, should be at liberty to improve it as he thought most beneficial to himself, and thereby, perhaps, deprive the mortgagor of the power of redeeming. The improvements may be beneficial in themselves, but if the mortgagor does not choose to have them, the mortgagee has no right to impose them upon him. In *Bostock* v. *Blakeney*, 2 *Bro. C. C.* 656, there was a trust fund created by will, to be laid out in the purchase of lands. The estate was purchased, and part of the trust money was laid out in building a house, and making improvements. Lord Thurlow held, that it was a misapplication of the fund, and refused to allow it, although the estate itself would be benefitted. The current of English authorities is in accordance with this one ; the only variation is, where lasting improvements have, in one or two instances, been erroneously, or by a latitude of construction, placed under the head of *repairs: Swan* v. *Swan*, 8 *Price*, 518 ; and the late case of *Marshall* v. *Case, Mich.* 1824, cited in 3 *Powell*, 957. Even in those cases, the ordinary rule is admitted, that money laid out in improving premises, does not create a lien. The same safe rule has been adopted in our own courts. In *Russel* v. *Blake*, 2 *Pick.* 505, it is expressly decided that a mortgagee cannot claim allowance for improvements made on the mortgaged premises, but only for keeping them in repair ; and in *Cable* v. *Moore*, 1 *Johns. Ch. Rep.* 387, and 1 *Johns. Ch. Rep.* 27, *Green* v. *Winter*, the chancellor says, such an allowance cannot be made consistently with established principles. There certainly can be no hardship in this rule. A mortgagee is no more bound to improve the estate, than the mortgagor is. If the mortgagor make improvements on the premises, after giving the mort-

gage, the whole of them shall go to satisfy the mortgage if it be necessary. He cannot say to the mortgagee, these improvements were not embraced originally under your lien, and therefore you are not to have the benefit of them. And so if the improvements are made by the mortgagee, they are voluntarily made, and he cannot turn round afterwards and claim allowance for them. They will enure to the benefit of the estate, and if he should suffer a loss, the maxim will well apply, " *volenti non fit injuria.*"

The principal difficulty arises on the subject of repairs. It is well settled, that a mortgagee in possession is not bound to expend money on the mortgaged premises, any further than to keep them in necessary repair : *Godfrey* v. *Watkins*, 3 *Atk.* 518 ; *Russell* v. *Smithies*, 1 *Anst.* 96 ; and for such expenditures, when incurred, he will receive allowance : *Moore* v. *Cable*, 1 *Johns. C. R.* 385. Even this has been looked on with great jealousy, and I think with some reason. And in the case of *Trimleston* v. *Hamill*, 1 *Ball & Beat.* 385, the court held that even in the case of repairs absolutely necessary, it was incumbent on the mortgagee to apprise the mortgagor, as soon as possible, of the extraordinary expenditure. I see no use in such notice, after the expenditure is made. If the court had gone on the broad principle that no repairs should be made, without the previous consent of the mortgagor, I should have considered it a safe rule. I do not see that this case has been followed ; and finding the law settled that an allowance is to be made for repairs, it remains to inquire what are the repairs for which the party may claim compensation. The language of the books is, "necessary repairs ;" and this language has been construed strictly. In *Saunders* v. *Frost*, already cited, it was sought to charge as repairs, the expenses of making an aqueduct ; but it not appearing, that without the aqueduct the mortgaged premises would not have been supplied with water, the charge was disallowed. In *Moore* v. *Cable*, 1 *Johns. C. R.* 387, before cited, the clearing of wild land was not considered a necessary reparation ; and Ld. Manners, in the case from *Ball & Beatty*, above referred to, puts such allowance on the ground of absolute necessity for the protection of the estate.

I am satisfied to keep within the strict rule. It appears by the testimony, that the mill and machinery was in rather better order

when Haight took possession of it, than when Smith left it. It had received some repairs. If the mill could have been used with the machinery as it was when Haight voluntarily took possession of it; if the repairs made, were for the purpose of increasing its speed, or enabling it to do a greater amount of work than it had formerly done, when its machinery was in order, so as to enhance the benefit of the possession, then no allowance is to be made for the repairs. If any expense was incurred in preparing the mill to receive the new machinery, which was not sold, and which was exclusively for the benefit of Haight, such expense cannot be allowed. The charge for painting is not considered a proper charge. Mr. Rogers, one of the witnesses, says the mill could have been worked with the old machinery without repairs, but not to so good an advantage. At the same time, he says, the machinery was pretty much run down, and wanted repairing. Again, he says, the improvements put by Haight upon the water wheel, the gearing for the water wheel, and the bridge over the race, were indispensable. If they were really indispensable to keep the mill in operation, they ought to be allowed. It is manifest, that as soon as Haight got possession, and had got in the incumbrances, as he supposed, he went to work on the property. His object was to improve it for his own benefit; and in some matters, it may be difficult to distinguish between necessary repairs, and highly beneficial improvements; but it may be done. I am induced to think, from the evidence, that some repairs have been made that call for an allowance. I cannot undertake to say there are none. I shall therefore refer it back to the master to take an account of such repairs, if any, and of the proper allowance to be made therefor.

As to the claim for the judgment and execution of the Paterson bank, there seems to be no difficulty. They bound the property before the sale, and must be satisfied. Whether the agreement between the bank and Haight operated as an assignment, or not, can make no difference. The whole matter of appropriation was considered as open, and if the money is paid to the bank, they must, under their arrangement, receive it for the benefit of Haight.

All further directions are reserved.